*B. & A. Monroe* for appellant.

---

# Partlow *vs* Lane.

## ERROR TO THE MEADE CIRCUIT.

Case 115.          *Equity and equitable jurisdiction.    Sales of land.*

May 13.          JUDGE MARSHALL delivered the opinion of the Court.

The case stated.          LANE filed this bill against Partlow, and the heirs of Asa Chambers, formerly his partner, alledging that he had paid the whole of certain partnership debts; that Chambers had died insolvent, and no administration had been granted; that some of his heirs, and among them, Partlow and wife, were non-residents; that before his death, Partlow, his son-in-law, had purchased a designated tract of land, then the property of Chambers, at Sheriff's sale, under execution against Chambers; and that the purchase was made by fraud and collusion, and in trust, and for the benefit of Chambers, and to embarrass his creditors. In the subsequent pleadings, the complainant sets

up an additional demand for money paid as the surety of Chambers—and he prays that the land purchased by Partlow may be sold for the satisfaction of his demands.

In the progress of the suit, process seems to have been served on all the defendants. An administrator was also appointed, some years after the bill was filed, who denies that any assets had come to his hands. The defendants, and especially Partlow, deny all the material allegations of the complainant, and on the hearing, the Court decreed a sale of the land, and directed the proceeds to be appropriated, first to the re-payment of $61, with interest, to Partlow, that being the price at which he purchased, and then to the satisfaction of two of the complainant's demands.

*Decree of the Circuit Court and objections thereto relied on.*

This decree is objected to mainly on the grounds—1st. That the proceedings are not conformable to the requisitions of the statutes regulating proceedings against non-resident and absent defendants. 2d. That there should have been no decree on account of the payment by Lane of the partnership debts of Lane & Chambers, until there had been a settlement of the partnership accounts. And 3d. That on the merits, the sale of the land was not proper, either on the ground of fraud or trust, and that if it was proper, Partlow had a lien for payments made by him for Chambers, after his purchase of the land, which he sets up in his answer, and which should have been satisfied out of the proceeds of sale before any appropriation thereof to the complainant's demands.

1. If the remedy in Chancery in this case were sustainable only on the ground of the non-residence of the defendants, or some of them, it would be open to all objections founded upon the statutes regulating such proceedings. But in the first place, the Chancellor has jurisdiction on account of the nature of the demands set up, the chief of which grows out of a payment by the complainant as surety for Chambers, and the others partake strongly of the same character. In such cases the Chancellor has original jurisdiction, and may proceed at once to ascertain and enforce the debt, without waiting for a judgment at law. Again, if as alledged, the purchase of Partlow was fraudulent and void, as against creditors, still

*The Chancellor has original jurisdiction to decree the re-payment of money paid by a surety for his principal.—*

it was good as against the heirs of Chambers ; and there being no personal estate, and no personal representative, and no assets having descended to the heirs, there was in fact no legal remedy. And according to the cases of *Ralls* vs *Graham,* (4 *Monroe,*) and *Campbell* vs *Harrisan,* (6 *Dana,*) the only remedy of the creditor was against the land, and through a Court of Equity. And so if the purchase of Partlow were not absolutely void, but the circumstances were such as to create a trust available to creditors, that trust is only enforcible in equity, and there was, for the reasons already stated, no legal remedy.

2. With regard to the objection that there should have been no decree until it had been ascertained by settlement, that Lane was not indebted to Chambers as partnears, it is a sufficient answer to say, that there is no suggestion by any of the defendants, either that there should be a settlement of the partnership affairs, or that there had been none, or that upon such settlement Lane would be found indebted to Chambers. There is indeed a suggestion, by way of cross interrogatory, that Lane may have paid the partnership debts, mentioned in the bill, out of partnership funds : but he denies positively that he did so, or that there were any such funds at the time of his payments, or for a long time before ; and the admitted insolvency of Chambers repels the idea that Lane was indebted to him. It may be added, that only about fifty dollars was decreed on account of the partnership debts, while upwards of $400 were decreed on account of payments by the complainant as surety of Chambers.

*3. The objection to the decree on the merits, is not so* easily answered. The proof does not establish, in opposition to the denial of the answer, *that* Partlow purchased or paid for the land with the money or other means of Chambers. The contrary is to be assumed upon this record, and is in fact the basis of the decree for restoring the purchase money to Patlow. There is therefore, no resulting trust on this ground. But Partlow, in his answer, admits "that on the day of sale Chambers remarked, that as his land had to be sold he would prefer respondents purchasing it to any one else, as he would have some chance of getting it back, to which respondent made no reply ;"

—And where there is no personal estate, the Chancellor has jurisdiction to set aside a fraudulent conveyance, and subject real property to the repayment of money paid as surety, without any judgment at law.

Where land was purchased at Sheriff's sale at a price less than two-thirds of its value, and paid for by purchaser, the debtor asserting publicly that the purchase was for his benefit, and not contradicted by purchaser, shows such unfairness as to authorize the Chancellor, at the instance of

and he says there was no other understanding between
them, before or after the sale, that Chambers was to have
any shadow of claim or benefit in it.   It appears, howev-
er, that Chambers, relying on this implied agreement,
represented to some of the bidders that Partlow was
buying the land in for him, and requested them not to
bid ; and it may be inferred that some of the bidders were
thus deterred from bidding, and that Partlow by this
means obtained the land at a lower price than he would
otherwise have done.   It is also proved, that after the
sale he said that when he purchased the land he bought
it in for Chambers, and did not then expect to pay for it
himself.   Under these circumstances, we are of opinion
that Partlow should be regarded as being, to some extent,
implicated in the conduct of Chambers, whereby the
price of the land was reduced.   Partlow may have ex-
pected that Chambers would furnish the money to pay for
the land when it should become due.   But as his acqui-
escence in the remark of Chambers, implied an assent
to the proposition therein contained, the effect of the im-
plied understanding was, that Chambers might get back
the land, even after the payment by Partlow, within such
period and on such terms as might, under the circumstan-
ces, be deemed reasonable.   On these points no difficul-
ty would probably have occurred between them.

Such a parol agreement, unaffected by other consid-
erations, might not have been enforcible between the par-
ties ; and it certainly does not of itself constitute a ground
for avoiding the sale in behalf of creditors.   And although
it may be assumed, that in consequence of that agree-
ment, Partlow obtained the land at a reduced price, we
cannot decide, that even this circumstance brought the
sale within the operation of the statute against fraudulent
conveyances, and rendered it absolutely void as to credi-
tors.   For it does not certainly appear that Partlow was
privy to the conduct of Chambers, in deterring others
from bidding, nor does it appear that the Sheriff had
any participation whatever in the arrangement; and
moreover, the reduction of the price at that sale, instead
of withdrawing the land from the reach of creditors, had
the effect, (as the land sold for less than two-thirds of its

PARTLOW
vs
LANE.

a prior creditor,
to subject the
property to sale
to satisfy his de-
mand, after re-
imbursing the
purchaser.

value,) to leave in Chambers a legal right of redemption, subject by law to immediate execution, and the more valuable in proportion as the price at the first sale was reduced. If the right of Chambers had been again levied on, we think it clear that Partlow's purchase could not have been disregarded, but that he would have been entitled to remuneration from the second sale, even though he might have openly co-operated with Chambers in reducing the price at the first sale.

But although we do not regard Partlow's purchase as absolutely void as to creditors, but consider him as having acquired the legal title by the Sheriff's deed, which has its full operation, because no creditor intervened to subject the legal right of redemption, still as Partlow obtained the title at a grossly inadequate price, occasioned in part, at least, by his agreement, for the benefit of Chambers, and by the improper conduct of Chambers, caused by that agreement, and perhaps impliedly authorized by it, we are of opinion there was so much unfairness in the sale, as that Partlow cannot conscientiously retain the land against the creditors of Chambers, for the small consideration for which it was struck off to him at the sale. His doing so would itself be a fraud, and as he in effect admits in his answer, the agreement that Chambers might get the land if he purchased it, and does not rely upon the statute of frauds to prevent the enforcement of that agreement, we are of opinion that the creditors of Chambers are entitled to the benefit of it upon equitable terms, and these terms imply, that before the title is taken from him for the benefit of others, he should be remunerated for advances actually made by him since his purchase, in payment of the debts of Chambers, for which advances he would undoubtedly have had a lien upon the land, if Chambers had himself applied to redeem it under their agreement. For one of the debts which he has thus paid since his purchase, it appears that an execution was actually levied on the land when he purchased, which seems to have issued on a judgment against Chambers and Partlow, the latter being surety of the former, but being a junior execution, no part of it was satisfied by the sale. There seems to be a peculiar

propriety in allowing him remuneration out of the land for this payment. And as he made not only this, but various other payments, while he held the title, subject at most, to a trust or right of redemption on equitable terms, we think it should not be taken from him until those payments are reimbursed.

The decree is therefore reversed, and the cause is re-manded, with directions to take an account of the various payments made by Partlow for and to Asa Chambers, deceased, as proved by the depositions in the record, and including the price at which he purchased the land, with interest. And unless Partlow shall pay to the complainant, by a day to be given in Court, the sums which have been decreed to him, to decree a sale of the land, or so much as may be necessary, applying the proceeds, first to the 'reimbursement of Partlow, according to the principles of this opinion, and then to the payment of the said sums decreed to the complainant.

*Owsley & Goodloe and Morehead & Reed* for plaintiff: *Grigsby* for defendant.